# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3928

_____

| | | |
|---|---|---|
| Roseann Thorne, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United |
| | * | States District Court |
| Welk Investment, Inc.; William | * | for the Western District |
| Welk; Marcia Paul, | * | of Missouri |
| | * | |
| Defendants - Appellants, | * | |
| | * | |
| Choice Hotel International, Inc. | * | |
| | * | |
| Defendant. | * | |

_____

No. 98-4048

_____

| | |
|---|---|
| Roseann Thorne, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * |
| | * |
| Welk Investment, Inc.; William | * |
| Welk; Marcia Paul; Choice Hotel | * |
| International, Inc., | * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted:  September 16, 1999
Filed:  November 22, 1999
_____

Before FAGG, BEAM, Circuit Judges, and BOGUE,[1] District Judge.
_____

BOGUE, District Judge.

Roseann Thorne worked as a desk clerk and manager of a Comfort Inn hotel in Nevada, Missouri.  The hotel is owned by Welk Investment, Inc., which in turn is a franchisee of Choice Hotel International, Inc.  Believing that she was a victim of sexual harassment on the job, Thorne brought this case against the Defendants under Title VII, 42 U.S.C. § 2000e et seq. and the Missouri Human Rights Act (MHRA). Mo. Rev. Stat. ch. 213.  The district court[2] dismissed franchisor Choice Hotel because it found that Choice Hotel was not Thorne's employer, and dismissed Thorne's state law tort claims on the ground that they were preempted by Missouri Workers' Compensation Law.  Following a trial, the jury returned a verdict in favor of Thorne.  Acting on post-trial motions, the court reduced the jury's award in several respects and made an award of attorneys' fees to the Plaintiff.  Both sides appeal.

## I. BACKGROUND

We recount the facts of this case by presenting the evidence submitted at trial in a light most favorable to the judgment.  Delph v. Dr. Pepper Bottling Co. of Paragould,

_____

[1]The Honorable Andrew W. Bogue, United States Senior District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

<u>Inc.</u>, 130 F.3d 349, 351 (8th Cir. 1997). Thorne was hired as a desk clerk at a Nevada, Missouri Comfort Inn in May 1995. Within three months, William Welk, the hotel's owner, invited Thorne to dinner to discuss a promotion to manager. Welk also offered her a car and payment of her mortgage. Thorne declined these offers, but accepted the job of manager, though it was obvious to her that Welk's interest in her was more than strictly professional.

Through the end of 1995 and into 1996, Thorne's suspicions were confirmed by a number of sexually suggestive comments and actions initiated by Welk. A representative sample will suffice: Welk tried to kiss Thorne; Welk called her on his car phone to ask if she was "horny;" Welk asked her to "get naked" in a jacuzzi; Welk grabbed her breasts in his hotel room; and when Welk confronted Thorne about maintenance issues at the Comfort Inn, he told her that she could have it "easy" like his girlfriend and sometime employee Marcia Paul, or she could have it "the hard way."

William Welk and Marcia Paul had a long-standing relationship which was at the same time professional and intimate. In November 1995, Thorne had an uncomfortable dinner with Paul and Welk where references were made about Welk's sexual relationships with some of his employees. A few days later, Paul told Thorne that there were three ways her employment could be terminated – stealing, lying, and "f—ing Bill Welk."

Around the same time, Becky Watkins visited the Nevada Comfort Inn and met Thorne. Watkins was one of Welk's employees from Arkansas. Watkins had been told by Jeannie Phillips, a Welk manager, that Thorne and Welk had an ongoing sexual relationship. Paul told Watkins that she would fire Thorne if this were true. When Watkins reminded Paul that employees could not be terminated for this reason, Paul responded that she would use the "dirty motel" excuse to justify her actions.

3

In January 1996, Choice Hotel performed a review of its Nevada Comfort Inn franchisee. The reviewer, Greg Scott, noted Thorne's helpfulness and gave the hotel a good housekeeping score. Thorne reported that she was being sexually harassed on the job. Scott told her to contact the EEOC or William Welk. The following month, Thorne filed her charge of discrimination with the EEOC.

When Paul learned of Thorne's EEOC filing, she begged Thorne to remove her name from the charge. Paul explained that she could fire Thorne if she had three performance write-ups. In March, Paul called Thorne and told her that she could either accept a demotion to desk clerk or be terminated. At a meeting the next day, Paul presented Thorne with three performance write-ups. Paul told her that she wanted to tape record her voluntarily agreeing to a demotion. Distraught, Thorne acquiesced.

On April 1, 1996, Thorne telephoned Paul and told her that she was ill and would not be in to work. Thorne's psychologist provided a work release. As her two week medical leave was about to expire, Thorne inquired as to when she would be placed back on the work schedule. Thorne soon learned that she no longer worked at the hotel. Paul had hired a replacement within a week of April 1.

## II. DISCUSSION

### A. Admissibility Issues

The Defendants challenge the admissibility of four separate items: the existence of an Arkansas defamation suit brought by Welk against Becky Watkins and Sandra Bullock; the testimony of Becky Watkins relating to this lawsuit; testimony regarding Welk's sexual relationships with other women; and reputation testimony regarding Welk's propensity for truthfulness. We have reviewed each item and find no reversible error in the court's rulings.

4

In a similar vein, the Defendants contend that the jury's verdict was based on passion and prejudice, and that the trial court therefore abused its discretion when it denied their motion for a new trial. Defendants claim that the improper jury verdict is evidenced by the excessive damage awards. It was the trial court's admission of the above discussed "inflammatory" evidence which created the "incendiary" environment in which the jury's verdict was rendered, they argue.

When a punitive damage award is the result of passion and prejudice, a new trial is usually required and remittitur is an inappropriate remedy. Hale v. Firestone Tire & Rubber Co., 820 F.2d 928, 936 (8th Cir. 1987). Remittitur is often inadequate in this situation because the passion and prejudice may have affected the jury's decision on the question of liability, as well as damages. 11 Charles A. Wright, et al., Federal Practice & Procedure § 2815 (2nd ed. 1995). This is the exception to the general rule, however, that "[t]he final determination of whether a new trial or remittitur is appropriate . . . is committed to the sound discretion of the trial court." Id. Our review of the trial transcripts leads us to reject, as the district court did, Defendants' assertion that improper evidence and questioning "poisoned" the verdict.

Defendants also cite Triple R Indus., Inc. v. Century Lubricating Oils, Inc., 912 F.2d 234, 239 (8th Cir. 1990) for the proposition that a plaintiff's consent is required before a court will authorize remittitur. See also Hale, 820 F.2d at 936; Everett v. S.H. Parks & Associates, Inc., 697 F.2d 250, 253 (8th Cir. 1983). In this case, the trial judge ordered remittitur without Plaintiff's waiver of her right to a new trial. That fact does not entitle Defendants to a new trial, however. Nonconsensual remittitur implicates the Plaintiff's Seventh Amendment jury right, not the Defendants' who lack standing to raise the issue. See Morgan v. Woessner, 997 F.2d 1244, 1258 (9th Cir. 1993), cert. dismissed, 510 U.S. 1033 (1993). We consider Plaintiff's arguments concerning the trial court's order of remittitur separately below.

**B. Welk's and Choice Hotel's Status as an Employer**

Next, Defendants argue that the trial court erred in concluding that Welk was personally Plaintiff's employer. Instead, Defendants claim, Thorne was actually employed by Welk Investment, Inc. In a related issue, the trial court granted summary judgment in Choice Hotel's favor on the ground that Choice Hotel, as franchisor, was not Thorne's employer. The Plaintiff appeals this determination. We, however, see no error of law or fact in either conclusion.

## C. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show participation in a protected activity, subsequent adverse action by the employer, and a causal connection between the two. 42 U.S.C. §2000e-3(a); Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995). Defendants claim that no reasonable jury could have concluded that a causal link was established between Thorne's demotion and termination and her filing the EEOC charge of sexual discrimination. Instead, Defendants point to evidence of Thorne's poor performance and work related misconduct as the cause of her demotion and ultimate termination. Defendants' claim of error is that the district court should have granted their motion for judgment as a matter of law on this claim.

For a court to grant judgment as a matter of law, "[t]he evidence must point unswervingly to only one reasonable conclusion." Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir. 1996), citing Johnson v. Cowell Steel Structures, Inc., 991 F.2d 474, 478 (8th Cir. 1993). Where, as here, a jury has been presented with conflicting testimony, we will not ordinarily disturb the verdict on appeal. See Kim v. Nash Finch Co., 123 F.3d 1046, 1061 (8th Cir. 1997). "The evidence in this case presented inconsistent inferences to the jury, and the resolution of this conflicting evidence was a matter for the jury to resolve." Id. at 1061-62. Accordingly, there was no error in the district

court's order denying Defendants' motion for judgment as a matter of law on Plaintiff's claim of retaliation.

## D. Damages

The jury awarded Thorne $220,000 in actual damages, $200,000 of which was designated for pain and suffering, and $725,000 in punitive damages on her Title VII and MHRA claims. The court reduced the jury's award and entered a judgment for $135,000 in compensatory damages and $135,000 in punitive damages. The district court also ordered that the Missouri service letter punitive damage award should be reduced from $50,000 to $10,000. Two separate issues are presented within the question of the district court's order of remittitur. First, we examine the amount of remittitur ordered. Next, we must determine whether the court was authorized to order remittitur in this case.

The court ordered the jury award of punitive damages for Defendants' violations of Title VII and the MHRA reduced from $725,000 to $135,000. The court also remitted the jury's award of compensatory damages from $220,000 to $135,000. In so doing, the court considered "the degree of malice, the financial worth of the parties, the injury suffered and all the relevant facts and circumstances." The court also noted the Plaintiff's sporadic work history and the fact that she was re-employed shortly after her termination from the hotel.

Next, the court reduced the jury's $50,000 award of punitive damages for the Defendants' violation of the Missouri Service Letter Statute[3] to $10,000. The evidence

---

[3]That statute provides that when an employee requests a service letter from a former employer, the employer shall within forty-five days issue a letter "setting forth the nature and character of the service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service." Mo. Rev. Stat. § 290.140.1. Employers

introduced at trial established that Thorne had sent two identical service letter requests on June 3, 1996, one in a certified envelope, as required by the statute, and one in a first class envelope on which she deliberately did not write a return address. She received both letters back in the mail and never obtained a service letter.

The court found that an award of $50,000 was "far more than necessary to deter and punish" and noted that there was no evidence that Thorne suffered any tangible detriment because of the failure to provide a service letter.

We review the reduction of damages by a district court for an abuse of discretion. Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 576 (8th Cir. 1997); see also Delph, 130 F.3d at 351. A verdict is not excessive unless the result is "monstrous" or "shocking." Jenkins v. McLean Hotels, Inc., 859 F.2d 598, 600 (8th Cir. 1988), quoting Stafford v. Neurological Medicine, Inc., 811 F.2d 470, 475 (8th Cir. 1987). Thorne claimed to have suffered considerable emotional distress but we agree, after carefully reviewing the evidence, that a compensatory award of $135,000 is not excessive, though an award of $220,000 was excessive as a matter of law. See Kim, 123 F.3d at 1067, citing Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1215-16 (6th Cir. 1996) (citing cases where emotional distress damages ranged from $40,000 to $150,000). Therefore we will not disturb the amount remitted on Thorne's compensatory damages. Insofar as the remittitur of punitive damages, it appears that the district court considered the factors relevant to the reasonableness of a punitive damages award, including the degree of reprehensibility of the defendant's conduct, and the ratio between the actual harm inflicted on the plaintiff and the punitive damages award. Id. (citations omitted). We see no abuse of discretion with regard to the remittited amount of punitive damages.

---

may be liable for nominal and punitive damages if the evidence establishes that a letter was not issued. Mo. Rev. Stat. § 290.140.2.

Having determined that the dollar figures remitted by the district court were within the court's discretion, we next turn to the question of whether the court was authorized to order remittitur in the absence of the Plaintiff's consent. The decision to order remittitur is circumscribed by the Seventh Amendment. Bonura v. Sea Land Serv., Inc., 505 F.2d 665, 669 (5th Cir. 1974). Here, the district court could have ordered the remittitur in the amounts stated by conditioning the denial of a new trial on Plaintiff's consent to the remittitur. Yost v. Sauter, 420 F.2d 79, 81 n.2 (D.C. App. 1969), citing Dimick v. Schiedt, 293 U.S. 474, 482, 55 S. Ct. 296, 299, 79 L.Ed.2d 603 (1935). Instead, the district court simply ordered remittitur without the Plaintiff's consent. This was in error. But cf. Parsons v. First Investors Corp., 122 F.3d 525, 529 (8th Cir. 1997) (noting "unique circumstances" where remittitur may be ordered unconditionally). Ordinarily, we would remand in order to allow the Plaintiff to elect between the judgment as remitted and a new trial. In this case, however, the Plaintiff has represented through her attorneys that she will waive her right to a new trial if given the choice. See Appellee/Cross-Appellant's Opening Brief at 53 n.10 ("Should the Eighth Circuit, however, simply decide to uphold the district court's remittitur and remand to give Plaintiff a choice, Plaintiff represents [she] would accept the remitted amount."). We acknowledge and hereby accept Plaintiff's waiver of her right to a new trial. Therefore we will affirm the district court's judgment as remitted.

## E. Workers' Compensation Exclusivity Defenses

The jury found against Marcia Paul and William Welk on Thorne's state law tort claims of intentional and negligent infliction of emotional distress. The district court granted post-trial motions for judgment as a matter of law on these claims, reasoning that under Missouri law, Welk and Paul were entitled to workers' compensation immunity. See Nichols v. American Nat'l Ins. Co., 945 F. Supp. 1242, 1248 (E.D. Mo. 1996). Thorne has appealed these rulings which we review de novo. Swanson v. White Consol. Indus., Inc., 30 F.3d 971, 973 (8th Cir. 1994).

Missouri's Workers' Compensation Law provides for the liability of employers for accidental injury of employees. Mo. Rev. Stat. § 287.120(1). The term "accident" includes, but is not limited to "injury or death of the employee caused by the unprovoked violence or assault against the employee by any person." Id. The Act provides an exclusive remedy and therefore preempts all other common law rights and remedies on account of such accidents. Mo. Rev. Stat. § 287.120(2). The Act thereby supplants and supersedes common law rights whenever the injury is "accidental" as that term is used within the statute. Jones v. Jay Truck Driver Training Ctr., Inc., 709 S.W.2d 114, 115 (Mo. 1986) (en banc).

It is well settled that it is the exclusive jurisdiction of the Missouri Labor and Industrial Relations Commission to determine whether an employee's injuries were the product of an "accident" for purposes of Workers' Compensation preemption. Goodrum v. Asplundh Tree Expert Co., 824 S.W.2d 6, 8 (Mo. 1991) (en banc); Killian v. J&J Installers, Inc., 802 S.W.2d 158, 161 (Mo. 1991) (en banc); Jones, 709 S.W.2d at 115. The Commission made no such determination of the Plaintiff's claims. Because Missouri law deprives courts of the jurisdiction to decide the "accidental" quality of common law state law tort claims, the district court was correct in granting judgment as a matter of law. Accordingly, this aspect of the district court's judgment will be affirmed.

### F. Attorneys' Fees

Pursuant to Rule 54(d), Thorne moved for an award of attorneys' fees and related non-taxable expenses in the amount of $388,266.42. See Fed. R. Civ. P. 54(d); 42 U.S.C. §2000e-5(k). The district court awarded her $267,100.00. Both sides appeal this determination; the Plaintiff claiming that the fees were improperly reduced, the Defendants arguing that the fees awarded were excessive.

The Plaintiff provided the court with over eighty pages of itemized billing which reflected twenty-three individuals who worked on the case. She claimed 2,448.80 billable hours and $35,000 in expenses. In trimming this fee request by roughly $121,000, the court expressed its opinion that Plaintiff's counsel had taken "an overbroad approach" to "a fairly straight forward claim of sexual harassment and retaliation and not the myriad of other claims and charges that served to drive the excessive time and expense of this litigation." The court also believed that the hourly rates for Plaintiff's trial attorneys were unreasonable given their lack of objectivity and duplicative efforts.

We review a district court's award of attorneys' fees under the abuse of discretion standard. St. Louis Fire Fighters Ass'n v. St. Louis, Mo., 96 F.3d 323, 331 (8th Cir. 1996). There are a number of factors district courts should consider in determining a reasonable fee award. Id. at 332 n.10. Although courts are to consider the results obtained which, in this case the Plaintiff describes as "excellent," counterweights in this case were the time required, the novelty and difficulty of the issues, and the requisite skills to perform the legal service properly, all of which the court felt the Plaintiff had overstated. See id. The district court determined that these factors did not warrant the fee request submitted and reduced the award accordingly.

One critical factor the district court should have also considered in a case like this is the attorneys' fees awards in similar cases. See, e.g., Delph, 130 F.3d at 358 (attorneys' fees of $88,800 in a racially hostile work environment case); Shrader v. OMC Aluminum Boat Group, Inc., 128 F.3d 1218, 1220 (8th Cir. 1997) (attorneys' fees of $44,137.50 in an ADA case); cf. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1048 (5th Cir. 1998) ($81,000 in attorneys' fees too high considering results obtained in Title VII case); but see Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2nd Cir. 1996), cert. denied, 520 U.S. 1274, 117 S. Ct. 2453, 138 L.Ed.2d 211 (1997) (affirming Title VII attorneys' fees of $753,202.99). It appears that the court neglected to include this factor in its calculations and as a result reached an attorneys' fees award amount which

was too high under the circumstances. When, as here, the amount sought by the prevailing party is far more than one would expect for a case of its complexity and novelty, the court should reference awards in similar cases. While we are not imposing an absolute pay scale for Title VII cases, we do believe that it was an abuse of discretion for the court to overlook this factor. Therefore, we will remand with instructions for the court to reconsider its award of attorneys' fees with attention to this neglected factor.

## G. Bifurcation

Finally, the Defendants claim error in the district court's refusal to bifurcate the punitive damages aspect of the case. See Fed. R. Civ. P. 42(b). Even if accepted, this assertion, standing alone, will not typically warrant reversal. E.g., EEOC v. HBE Corp., 135 F.3d 543, 551 (8th Cir. 1998). This the Defendants acknowledge, yet claim that the court's decision not to bifurcate constituted an abuse of discretion if considered cumulatively with the other asserted evidentiary errors. We disagree. The decision of whether to isolate the punitive damages phase of the trial is within the sound discretion of the trial court. We can discern no abuse of that discretion in the record before us.

## III. CONCLUSION

For the foregoing reasons, we conclude that the case should be affirmed in part and reversed in part. With respect to the attorneys' fees, we reverse and remand for reconsideration by the trial court as hereinbefore discussed. Upon reconsideration of this award, the trial court shall enter an order reflecting its decision as to this issue. In all other respects, the decision of the district court is affirmed. For further proceedings consistent with this opinion, the case is remanded.

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.