# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1580

_____

Viola Fair,                                              *
                                                        *
        Plaintiff-Appellant,                   *
                                                        *
                                                        *   Appeal from the United States
        v.                                     *   District Court for the Eastern
                                                        *   District of Arkansas.
Larry Norris, Director, Arkansas                        *
Department of Correction; Kevin                         *   [PUBLISHED]
Murphy, Human Resources                                 *
Administrator; Arkansas Department                      *
of Correction; Ray Hobbs, in his                        *
capacity as Chief Deputy Director,                      *
                                                        *
        Defendants-Appellees.                  *

_____

Submitted: March 16, 2007
Filed: March 27, 2007

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff Viola Fair, an African-American woman, brought several employment-discrimination claims against the Arkansas Department of Correction and some of its officers (collectively, "the ADC") for events relating to the ADC's handling of her

application for an internal promotion. The district court[1] granted the ADC's motion for summary judgment on all of Fair's claims. Fair appeals only the grant of summary judgment as to her claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. We affirm the judgment of the district court.

## I. BACKGROUND

We recount the relevant evidence in Fair's case below. Because this is an appeal from an adverse grant of summary judgment, we present the evidence in the light most favorable to the nonmoving party. Gilmore v. AT&T, 319 F.3d 1042, 1046 (8th Cir. 2003).

Fair graduated from the University of Arkansas at Pine Bluff in 1995, with a bachelor's degree in criminal justice. That same year, the ADC hired her for the entry-level position of Administrative Assistant II at the standard pay level for the job, Grade 17/Level I. Her formal performance reviews were strong. While working at the ADC, she attended graduate school part-time at the urging of a supervisor, Ray Hobbs.[2] Fair eventually earned a master's degree in social work from the University

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

[2]In her complaint, Fair alleged incidents of sexual harassment by Hobbs during her tenure at the ADC. Fair's complaint to the Equal Employment Opportunity Commission alleged only racial discrimination with regard to non-promotion for an open position. The alleged incidents of sexual harassment occurred well before Fair applied for the position, and Hobbs had no decision-making role in the hiring for that job. We have held that a Title VII plaintiff generally does not exhaust her administrative remedies unless she complains of the discriminatory behavior to the EEOC before filing a lawsuit. Stuart v. General Motors Corp., 217 F.3d 621, 630-31 (8th Cir. 2000). Although an EEOC complaint "need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court," it must nevertheless "be sufficient to give the employer notice of the subject

of Arkansas at Little Rock in the spring of 2003. Shortly after obtaining this degree, Hobbs informed her of job vacancies in the ADC's Internal Affairs Division, told her that she would be a strong candidate, and encouraged her to apply. Fair applied for two vacant, identical positions as an investigator for the ADC's Internal Affairs Division. The job posting stated that the salary for the position was $23,768 annually, a Grade 18/Level I pay level. In her application, Fair listed her educational history (including her master's degree) and her work experience, and she attached copies of relevant training certificates, scholastic transcripts, and letters of recommendation. Fair did not state in her application or attached materials that she harbored reservations about accepting the position at the advertised level of compensation.

The ADC claims to have received an application from Fair for only one of the positions, and it delivered the application to Tammy Luckett, the Unit Human Resources Manager and employee responsible for "pre-screening" the applicants. In the pre-screening process, it was Luckett's duty to perform an initial review of the applications and award standard numbers of "points" for applicant qualifications above the minimum required for the posted job opening. The Internal Affairs investigator position required a bachelor's degree "in criminal justice or a related field," which Fair possessed. Fair's additional master's degree in social work entitled her to five pre-screening points for education above the minimum job requirements, but Luckett did not award the points to Fair. Luckett claimed she failed to award the points because she mistakenly believed that social work was not a "related field" within the meaning of the job requirements. There is no evidence that Luckett knew Fair's race, and Luckett made the same error in pre-screening the application of Cynthia Tillman, a white woman who was also seeking an investigator position in

---

matter of the charge and identify generally the basis for a claim." Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1123 (8th Cir. 2006). Given the lack of any apparent relationship between Fair's allegations of sexual harassment by Hobbs and the basis for her complaint to the EEOC, we find that Fair has failed to exhaust her administrative remedies with regard to her claim of gender discrimination.

Internal Affairs. Tillman also possessed a master's degree in social work, and Luckett also failed to grant Tillman five points for her advanced educational qualifications.

In the hiring process, the ADC combines an applicant's pre-screening points with his or her interview score for an overall numerical rating. The relevant division supervisors for the job vacancy then choose one of the three highest-scoring applicants for the position. As a direct result of Luckett's failure to credit Fair with five points for her master's degree, Fair was not one of the three highest-scoring applicants for the position—her point total was fifth-highest of twelve interviewed applicants—and therefore she was not selected. The ADC notified Fair of this decision by letter dated August 4, 2003. Three days later, Fair filed a formal grievance with the ADC, claiming that she was more qualified than the selected candidate and arguing that the ADC's failure to hire her for the vacancy constituted a violation of Title VII.

After conferring with a lawyer, she asked that the ADC remedy the situation by hiring her as an investigator at the maximum pay level for the position (Grade 18/Level IV), including retroactive pay and benefits from the date the position was filled. Under the state compensation scheme, the Level IV pay rate is reserved for "Exceptionally Well-Qualified" candidates. Such a pay rate for an employee entering a new position would require approval from the Arkansas Office of Personnel Management, the state's Chief Fiscal Officer, the Committee on Uniform Classification and Compensation, and the Arkansas Legislative Council. According to Kay Barnhill, State Classification and Compensation Manager for the Arkansas Department of Finance and Administration, "level IV special entry rates are rarely sought and rarely granted," as the state generally reserves Exceptionally Well-Qualified status for "professional positions . . . for which pay level I may not provide a salary that is competitive with the private marketplace." Barnhill noted that it was "highly unlikely" that her office would have approved level IV compensation for Fair, and she stated that the Office of Personnel Management probably would have denied that entry rate if there were other qualified applicants who would have accepted the

regular rate. Fair admits that she did not expect to receive Grade 18/Level IV compensation for the position, but nevertheless made the aggressive request with the hope of receiving an offer for some increase in compensation above Grade 18/Level I.

In a memo dated August 25, 2003, Luckett informed Human Resources Administrator Kevin Murphy that she had mistakenly failed to award five points to Fair during the pre-screening process. With the five points, Fair would have had the highest score of the remaining applicants.[3] Murphy contacted the hiring authority for the Internal Affairs position, told him that there was a new top applicant, and received confirmation that the hiring authority wished to employ Fair as an investigator.

Murphy and Richard Rodgers, the Equal Employment Opportunity/Grievance Officer for the ADC, contacted Fair to arrange a meeting the next day. They did not permit Fair's attorney to attend. Fair met as scheduled with Murphy, Rodgers, and Nedenia Blair, an African-American employee at the ADC. Rodgers explained the mistake in the pre-scoring process and offered Fair the position at the Grade 18/Level I compensation scale. This compensation package included the standard six-percent pay raise for a one-grade intra-departmental promotion, which would be retroactive to the date she would have been hired absent Luckett's mistake. Fair asked for higher pay, and Murphy told her he was not authorized to go above the standard increase. Fair pointed out that Murphy could request "Exceptionally Well-Qualified" status for her from the proper state agencies, and Murphy became upset and struck the desk. Fair then said that, given her exceptional qualifications, she would not accept the position unless she received more than the standard pay raise.

---

[3]Two applicants' scores would have been higher than Fair's revised score, but those applicants withdrew their names from consideration for the Internal Affairs investigator position before the hiring decision was made.

Later that day, Rodgers sent Fair a memo memorializing the meeting. The memo noted that Fair was offered and had refused to accept the job for which she had applied on the ground that she wanted higher compensation. Because she had been offered the promotion, Rodgers noted that the basis of her grievance had been resolved; now that her dispute was merely a matter of compensation, it was no longer subject to the ADC's grievance procedures. Therefore, he dismissed the grievance.

Fair remained employed at the ADC in her capacity as an administrative assistant, and has since received a promotion to the position of program coordinator at a Grade 18/Level I pay scale. She filed a complaint in the United States District Court for the Eastern District of Arkansas in April of 2004, after receiving a right-to-sue letter from the Equal Employment Opportunity Commission. The complaint alleged, inter alia, that the ADC discriminated against Fair by failing to promote her in violation of Title VII, the Equal Protection Clause of the Fourteenth Amendment, and state civil-rights statutes. She sought damages and job placement as an Internal Affairs investigator at the Grade 18/Level IV scale.

The ADC moved for summary judgment, arguing that Fair had not suffered any adverse employment action and that Fair had not shown that her initial non-selection for the position was anything but a mistake. The district court granted the motion as to each of Fair's claims. With regard to her racial-discrimination claim under Title VII, the court found that even "[a]ssuming Fair has presented sufficient evidence to satisfy her *prima facie* burden" of proof under Title VII, she had not produced evidence to contradict the ADC's claim that its initial failure to promote Fair was a result of Luckett's mistake rather than discrimination. Thus, because the ADC had presented a legitimate, non-discriminatory reason for not initially promoting Fair, and

because Fair lacked any evidence that this articulated reason was a mere pretext for discrimination, the court found that summary judgment for the ADC was appropriate.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. Wheeler v. Aventis Pharm., 360 F.3d 853, 857 (8th Cir. 2004). In doing so, we affirm only when "the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Gordon v. Shafer Contracting Co., 469 F.3d 1191, 1194 (8th Cir. 2006) (quotation omitted). In the employment-discrimination context, a plaintiff may avoid summary judgment if she presents evidence "sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus." Dionne v. Shalala, 209 F.3d 705, 709 (8th Cir. 2000) (quotation omitted).

We limit our discussion to the district court's grant of summary judgment on Fair's Title VII claim for racial discrimination because she failed to exhaust administrative remedies with regard to her gender discrimination claim, see note 2, supra, and waived any arguments related to her other claims by failing to raise them in her opening brief. See Harris v. Folk Constr. Co., 138 F.3d 365, 367 n.1 (8th Cir. 1998) ("[B]y failing to assert grounds for reversal of these orders in his briefs, [the appellant] is deemed to have waived these issues on appeal.").

Fair presented no direct evidence of discrimination, and therefore the district court applied the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, the plaintiff must establish a prima facie case of discrimination; if she does so, the burden of production shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment decision. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1046 (8th Cir. 2002). If the

employer presents such a reason, the burden returns to the plaintiff to present evidence that the reason was a pretext for intentional discrimination. Id. Fair argues that the district court failed to recognize evidence that the purported mistake in pre-scoring her application may have been pretextual.

We need not reach the question of pretext in this case, because Fair was not ultimately rejected for the promotion. Therefore, we find that Fair failed to present a prima facie case of discrimination. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1046 (8th Cir. 2002) (listing the four elements of a prima facie case for the failure to promote under Title VII, one of which is a showing that the plaintiff was rejected for the position she sought). It is true that the ADC initially failed to hire Fair for the position she sought. Had the ADC not taken corrective action and offered Fair the job after reviewing her grievance, she may have been able to present a prima facie case of discrimination. Once the ADC made its subsequent offer of the promotion with retroactive pay and benefits, however, it had no longer rejected Fair for the promotion. The basis for Fair's initial grievance was the ADC's failure to select her for the position; the ADC acted upon this grievance, discovered that it had erroneously rejected her for the promotion, and attempted to right its prior wrong by offering her the position she wanted. Even if there were flaws in the manner in which the ADC handled Fair's grievance, its ultimate decision to offer the promotion to Fair is the kind of extrajudicial corrective action envisioned by Congress when it passed Title VII. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764 (1998) (noting "Congress' intention to promote conciliation rather than litigation in the Title VII context").

Fair does not dispute these facts, yet nevertheless contends that she suffered an adverse employment action within the meaning of Title VII. She primarily argues that she should not have had to file a grievance to receive the promotion for which she was qualified, and that the ADC should have offered her the pay she sought in the new position. While the general premise of her first contention may be sound in theory,

it loses its strength under the facts of this case. Only twenty-two days lapsed between the filing of Fair's grievance and the ADC's offer of the promotion, an offer that included retroactive pay and benefits for the time Fair was wrongfully deprived of the promotion she sought. Within the context of Title VII, this delay amounted to no more than a "mere inconvenience" and does not give rise to an actionable Title VII claim. See Cruzan v. Special Sch. Dist. No. 1, 294 F.3d 981, 984 (8th Cir. 2002).

The compensation issue also lacks the necessary factual support to survive summary judgment. While Title VII does prohibit race-based wage discrimination, 42 U.S.C. § 2000e-2, a plaintiff who pursues such a claim must show that her employer "paid different wages to employees of different races for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Tademe v. St. Cloud State Univ., 328 F.3d 982, 989 (8th Cir. 2003) (quotation omitted). The ADC operated under the compensation structure for state employees. Fair does not contest the ADC's assertion that a six-percent raise is standard for one-grade promotions within the ADC, and Fair admitted that she did not expect to receive Level IV pay for the position. Barnhill confirmed that it was "highly unlikely" such a pay level would have been approved for Fair in the position she sought. Furthermore, Fair does not present evidence as to any similarly situated employee of a different race who received higher than the standard pay increase for a one-grade intra-departmental promotion,[4] nor any

---

[4]Fair points to ADC social worker Paul Mincey, a white male and fellow recipient of a master's degree in social work at the University of Arkansas at Little Rock, as an example of a similarly situated employee who was offered his current position and a higher salary than Fair shortly after receiving his degree. Beyond Fair's bare assertions, however, the record is silent as to Mincey's qualifications, salary level, job duties, and whether the compensation structure for the position of social worker is relevant to that of the position of Internal Affairs investigator. Therefore, on the record before us, we cannot say that the ADC's purportedly favorable treatment of Mincey supports Fair's claim that the ADC discriminated in failing to give her a higher salary for the position she sought.

employee who was compensated on a higher scale than Grade 18/Level 1 for the position of Internal Affairs investigator. She points out that she "tried consistently" to find out how to get higher levels of pay at the ADC, but "[n]o one seems to know . . . . [H]ow you get to these other levels is like a State secret." While this statement suggests a lack of familiarity with the compensation scheme among ADC employees, it does not alone prove that the ADC paid different wages to employees of different races for substantially similar work. Therefore, to the extent Fair raises a claim that the ADC discriminated against her by failing to offer the promotion at a higher salary, that claim also lacks evidence sufficient to avoid summary judgment.

In sum, Fair sought a promotion. The ADC ultimately offered her the promotion at the advertised salary. Fair turned it down. Absent additional facts not present in the record before us, no reasonable factfinder could conclude that Fair is entitled to relief under Title VII.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____