United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-2268

_____

| | |
|---|---|
| Charles Parsons, Elizabeth Parsons, | * |
| | * |
| Appellees, | * |
| | * |
| v. | * |
| | * |
| First Investors Corporation, | * |
| | * |
| Appellant. | * |

_____

No. 96-2290

_____

Appeals from the United States
District Court for the
Western District of Missouri.

| | |
|---|---|
| Charles Parsons, Elizabeth Parsons, | * |
| | * |
| Appellants, | * |
| | * |
| v. | * |
| | * |
| First Investors Corporation, | * |
| | * |
| Appellee. | * |

_____

Submitted: January 13, 1997

Filed: August 7, 1997

_____

Before WOLLMAN and HANSEN, Circuit Judges, and MONTGOMERY,[1] District
Judge.

_____

WOLLMAN, Circuit Judge.

Charles and Elizabeth Parsons sued First Investors Corporation (First Investors),
claiming they were fraudulently induced to invest in a junk bond mutual fund managed
by First Investors. The jury returned a verdict for the Parsons, awarding them
compensatory and punitive damages. The district court subsequently remitted the
punitive damages award and denied First Investors' motion for a new trial. First
Investors appeals, and the Parsons cross-appeal. We affirm.

**I.**

In the 1980s, First Investors, a securities company having $3 billion in assets
under management and a net worth of $6.9 million, offered a mutual fund that invested
in junk bonds. Charles and Elizabeth Parsons, a retired couple with a net worth of
$80,000 and no investing experience, invested in this fund and lost money as a result.
The Parsons sued under Missouri law, alleging that First Investors fraudulently induced
them to invest in the fund with assurances that the fund was a conservative investment
and that the value of their principal would not fluctuate, something that was not true.
The jury awarded the Parsons $26,949.51 in compensatory damages.

The issue of punitive damages was submitted separately to the jury. The Parsons
argued for a punitive damage award, suggesting several ways the jury might calculate
an appropriate amount based on First Investors' net worth of $6.9 million and asking

_____

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge
for the District of Minnesota, sitting by designation.

for an award of $500,000 or more.  During rebuttal argument, counsel for the Parsons made the following statement:

> The defendant teaches people to go into other people's houses to use management skills, to use psychological hooks to get trust.  And after they get this trust, after they target unsophisticated, inexperienced and elderly people, and they establish this trust, they then wrecklessly [sic] disregard those people's rights.  How could it possibly be otherwise?  They have got $3 billion in assets total, and they have got one -- remember Ms. Head -- 1.6 --

First Investors objected and moved for a mistrial, arguing that Parsons' counsel had misled the jury with the $3 billion comment.  After a discussion with counsel, the court stated that "the $3 billion in assets is absolutely improper at this stage.  I mean that it leads this jury to believe that $3 billion is something at which they could punish this defendant."  The court stated that it would take corrective action because "the only hope to salvage this trial . . . at least to salvage the punitive damage part," was to instruct the jury to disregard the comment.  The court also stated:

> I am not saying that I am convinced that is going to do the job.  But at least it's the only thing that can be done, and it's got to be done quickly, because the longer they are sitting there and stare and think about $3 billion, the greater the potential.

The court admonished the jury to disregard the $3 billion reference.  The jury then returned a verdict awarding the Parsons $500,000 in punitive damages.

First Investors subsequently moved for a new trial or remittitur, arguing that the $3 billion comment was unfairly prejudicial.  The court noted that at the time it instructed the jury to disregard the comment, it "was not convinced . . . that the instruction would cure the unfair prejudice caused" by the $3 billion reference.  The

court stated that the inaccurate reference to $3 billion was likely to lead the jury to believe that it could base its amount of punishment on this figure and that regardless of what the jury believed, $3 billion was such a large amount of money that it carried a "high potential" of prejudice. The court concluded:

> After reflecting on the evidence regarding the $3 billion, on the fact plaintiff's counsel referred to it in the rebuttal portion of closing argument so that defendant had no opportunity to reply, on the fact that the evidence of defendant's net worth was a small fraction of $3 billion, and on my reaction at the time to the impact on the jury of the $3 billion reference, I believe that the cautionary instruction did not cure the unfair prejudice incident to suggesting that defendant has $3 billion in assets.

The court concluded that the fairness of the punitive damages procedure had been "unfairly prejudiced" by the $3 billion reference. To cure this unfairness, the court noted that the punitive damages award could be reversed, but concluded that a reduction in the amount of the award "will fully compensate for the ineffectiveness of the cautionary instruction in erasing the unfair prejudice resulting from counsel's remark." The court then reduced the amount of punitive damages to $300,000.

## II.

### A.

First Investors argues that the district court erred in not submitting special instructions to the jury regarding its statute of limitations defense. After reviewing the instructions, we conclude the instructions necessarily required the jury to resolve the statute of limitations issue in the Parsons' favor in order to ultimately find for the Parsons.

**B.**

Both parties challenge the district court's remittitur order.  First Investors argues that the court should have ordered a new trial rather than a remittitur.  The Parsons contend that no remittitur was necessary.

"The decision to grant remittitur in a diversity action is a procedural matter governed by federal, rather than state, law." In re Knickerbocker, 827 F.2d 281, 289 n.6 (8th Cir. 1987); see Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278-79 (1989).  We review a district court's decision to order remittitur for abuse of discretion, see id. at 279, and we will not reverse its denial of a motion for a new trial absent a clear abuse of discretion.  See Keenan v. Computer Assoc. Int'l, Inc., 13 F.3d 1266, 1269 (8th Cir. 1994); Lockley v. Deere & Co., 933 F.2d 1378, 1385 (8th Cir. 1991).

"We realize that the general rule is that where a punitive damage award is the result of passion and prejudice, a new trial is required and that a remittitur is not an appropriate remedy," because of the concern that the liability finding may have been compromised.  See Hale v. Firestone Tire & Rubber Co., 820 F.2d 928, 936 (8th Cir. 1987); 11 Charles Alan Wright, et al., Federal Practice and Procedure § 2815 at 165 (1995).  In unique circumstances, however, we have held that a remittitur may be used and that new trial is not necessary.   See Hale, 820 F.2d at 937 (despite prejudice caused by counsel's actions, remittitur better remedy than ordering fourth trial and subjecting parties to additional expenses);  Ouachita Nat'l Bank v. Tosco Corp., 716 F.2d 485, 488 (8th Cir. 1983) (en banc) (approving district court's decision to remit damages award miscalculated because of improper closing argument); Kropp v. Ziebarth, 601 F.2d 1348, 1354-55 (8th Cir. 1979) (per curiam) (jury improperly influenced by party's damage calculation, but because of complexity, large record, and time that had passed since events in question, remittitur was option to new trial); Wright, et al., § 2815 at 166 n.14 (although passion may have affected verdict, "an

opportunity to reduce the award as an alternative to a new trial might well be offered . . . wherever the trial judge is satisfied with the justness of the result on the question of liability" (quoting McCormick, Damages § 19 (1935)); see also United States v. 47.14 Acres of Land, 674 F.2d 722, 728 (8th Cir. 1982) ("The use of a remittitur as an alternative to a new trial is appropriate for complex, lengthy litigation.").

We conclude that the district court did not abuse its discretion in ordering a remittitur rather than a new trial. First, because the trial was bifurcated, there is no risk that the liability and compensatory damages determination was affected by counsel's remark. Second, a new trial on punitive damages would be unnecessarily costly and complex because it would require re-presentation of much of the evidence from the liability phase as well as the punitive damages evidence. Third, we are now ten years removed from the events giving rise to this litigation. Finally, we defer to the district court's determination of the impact of a prejudicial remark during closing arguments and its assessment of the effectiveness of any curative measures. See Vanskike v. Union Pacific R. Co., 725 F.2d 1146, 1149 (8th Cir. 1984) ("`The district court is in a better position to determine whether prejudice has resulted from a closing argument and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion.'" (quoted case omitted)); Ouachita Nat'l Bank, 716 F.2d at 490 n.4 ("Reading the transcript of the closing argument, we might be inclined to agree [that the argument was not prejudicial], but we were not in the courtroom and we are in no position to speculate about the overall effect of that argument. The trial judge was in the best position to observe and assess the effects of the final argument."). Cf. Lockley, 933 F.2d at 1388-89 (improper reference in closing arguments to $3 billion gross sales not basis for new trial because prejudice from isolated statement diminished by district court's instructions and jury was already aware of wealth disparity between parties).

## C.

First Investors argues that the remitted punitive damages award of $300,000 is excessive, both under Missouri law and the Due Process Clause.

"A district court's determination concerning whether a punitive damages award is in accordance with state law is reviewed for abuse of discretion." Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 577 (8th Cir. 1997) (citing Browning-Ferris Indus. of Vermont v. Kelco Disposal, Inc., 492 U.S. 257, 278-79 (1989), and Gasperini v. Center for Humanities, Inc., 116 S. Ct. 2211, 2223-24 & n.18 (1996)). In Missouri, "[p]unitive damages 'are imposed for the purpose of punishment and deterrence.'" Rodriguez v. Suzuki Motor Corp., 936 S.W.2d 104, 110 (Mo. 1996) (en banc) (quoting State ex rel. Smith v. Greene, 494 S.W.2d 55, 60 (Mo. 1973) (en banc)).

> Missouri places no set limit on punitive awards, but requires that "when punitive damages are awarded by a jury, both the trial court . . . and the appellate court review the award to ensure that it is not an abuse of discretion." Call v. Heard, 925 S.W.2d 840, 849 (Mo. 1996) (en banc). Several factors may be considered, including the degree of malice or outrageousness of the defendant's conduct, aggravating and mitigating circumstances, the defendant's financial status, the character of both parties, the injury suffered, the defendant's standing or intelligence, and the relationship between the two parties. Id. at 849 (citing Moore v. Missouri-Nebraska Exp., Inc., 892 S.W.2d 696, 714 (Mo. Ct. App. 1994)). "An abuse of discretion is established when the punitive damages award is so disproportionate to the factors relevant to the size of the award that it reveals 'improper motives or a clear absence of the honest exercise of judgment.'" Call, 925 S.W.2d at 849 (citation omitted).

Kimzey, 107 F.3d at 576.

The district court found that the evidence supporting the punitive damages award in this case included evidence of harm to the Parsons and similarly situated investors; evidence that the misrepresentations made to the Parsons were the result of a general company policy of First Investors, and that a misleading sales presentation was used

-7-

company-wide to target unsophisticated investors; and evidence that First Investors trained its representatives to gloss-over or conceal the true nature of the risks involved in investing in the junk-bond mutual fund. The district court also noted that the Parsons "are an elderly retired couple of good standing in the community, but with limited education and investment experience. The defendant was experienced in selling financial investments." Further, the court found that there was evidence from which the jury could have inferred that First Investors knew the representations it made to the Parsons were misleading and that First Investors "intended to take advantage of unsophisticated investors." The court concluded, "[f]raudulent representations which put the life savings of the elderly at risk are reprehensible and deserve punishment." Based on these findings we conclude that the district court did not abuse its discretion in determining that an award of punitive damages was justified.

We also conclude that the $300,000 award is not so "grossly excessive" in relation to Missouri's interests that it has entered into the "zone of arbitrariness" that violates the Due Process Clause. See BMW of North America, Inc. v. Gore, 116 S. Ct. 1589, 1595 (1996). Analyzing the award under the first of the three guideposts defined by the Supreme Court in BMW--"the degree of reprehensibility of the defendant's conduct," id. at 1599--we find to be highly reprehensible First Investors' scheme of misleading unsophisticated investors such as the Parsons, who put a substantial portion of their life savings at risk, about the dangers of investing in the junk-bond fund. See id. ("infliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty" (citation omitted)). Turning to the second guidepost--the ratio between the punitive damage award and the actual harm inflicted on the plaintiff, id. at 1601--the ratio of punitive damages to actual damages in this case is 11.13 to 1. We conclude that this ratio evinces a "reasonable relationship" between actual and punitive damages given the nature of First Investors' conduct. See id. at 1601; Pulla v. Amoco Oil Co., 72 F.3d 648, 660-61 (8th Cir. 1995) (must be "some proportion" and a "reasonable relationship" between punitive and actual damages).

Both the Supreme Court and our court have previously approved ratios of 10 to 1. See BMW, 116 S. Ct. at 1602 & n.34 (citing TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 462 (1993)); Kimzey, 107 F.3d at 578 & n.4. Because First Investors does not argue that the punitive damages award is inconsistent with comparable civil or criminal sanctions that could be imposed for its conduct, we need not review the award in the light of this the third of BMW's guideposts. BMW, 116 S. Ct. at 1603.[2]

The judgment is affirmed.[3]

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]First Investors argues that the jury instructions allowed the jury to punish First Investors on the basis of its conduct towards investors in states other than Missouri. Such evidence is, however, "relevant to the determination of the degree of reprehensibility of the defendant's conduct." BMW, 116 S. Ct. at 1598 n.21. Although the instructions did not prevent the jury from considering First Investors' conduct outside Missouri, First Investors' concerns are belied by the record. No evidence was introduced at the punitive damages phase regarding First Investors' conduct towards investors outside Missouri, nor did the Parsons argue that the jury should consider First Investors' conduct in other states. Accordingly, any error in the instructions was harmless.

[3]First Investors' motion to strike materials the Parsons filed on appeal is denied.