# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————

No. 06-2589

————

Gregory Taylor,

        Appellant,

v.

Otter Tail Corporation, et al.

        Appellee.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of North Dakota.
\*
\*
\*

————

Submitted: January 12, 2007
Filed: April 10, 2007

————

Before WOLLMAN and MELLOY, Circuit Judges, and NANGLE,[1] District
    Judge.

————

NANGLE, District Judge.

This appeal arises from the district court's reduction of a jury verdict in a
personal injury case. While the district court's order is unclear as to the procedural
vehicle it used to reduce the award, we conclude that the court remitted past and
future economic damages. In accordance with the remittitur standard, we hold that

---

[1] The Honorable John F. Nangle, United States District Judge for the Eastern
District of Missouri, sitting by designation.

the past and future economic damages awards were not so excessive as to shock the conscience, and reinstate the jury's original awards.

## I. BACKGROUND

Appellant Gregory Taylor brought this suit against Appellees Otter Tail Corporation and Midcontinent Media, Inc. ("Appellees"),[2] seeking compensation for injuries he sustained during an on-the-job fall. Taylor was a lineman employed by Cable System Services ("CSS"), a contractor hired by Midcontinent Media, Inc., to rebuild the cable television system in Cooperstown, North Dakota. While working on this project, on August 19, 1998, Appellant, who was thirty-five years of age at the time, was seriously injured when the utility pole he was strapped onto broke. Appellant fell to the ground, and the pole fell on top of him; the pole then bounced up and landed on him again.

Appellant suffered severe injuries as a result of the fall, and was hospitalized for two weeks. He broke both his pelvis and sacrum ,had an epidural hematoma, and suffered damaged nerves and two dislocated discs; he also suffers from chronic hip and leg pain, and his bladder does not function properly. By the end of 1998, because Taylor could no longer climb poles, he went to work as a supervisor for CSS in Langdon, North Dakota. In 2002, CSS was no longer engaged in any ongoing projects in North Dakota. Therefore, continued employment with the company required extensive travel. Taylor was experiencing difficulty traveling long distances due to his chronic pain, and therefore felt he could not remain employed

---

[2] The jury determined that Appellee Midcontinent Media, Inc. bore no direct liability to Taylor; however, Midcontinent remains an interested party due to a defense agreement requiring Midcontintent to contribute to any judgment against Otter Tail.

with CSS. In 2002, Taylor received a $42,000.00 Worker's Compensation settlement, which he used to start an unsuccessful snow-blowing business.

In 2004, Taylor brought this suit against Appellees, which was properly removed to the court below,[3] and proceeded to jury trial. At the close of the evidence, Appellees argued that no evidence was adduced at trial in support of an award for future economic damages, and that, consequently, the court should not instruct the jury regarding future economic damages. The court took the arguments under advisement, and submitted the case to the jury with a future damages instruction. In accordance with North Dakota's law of comparative fault,[4] the jury determined the percentage of fault attributable to each of the parties, assessing fault as follows: (1) Appellee Otter Tail, the owner of the pole, forty-nine percent; (2) Appellant, thirty-one percent, presumably for climbing the pole without performing the precautionary safety tests recommended by the Occupational Safety and Hazard Administration guidelines; and (3) twenty percent to "other."[5] The jury awarded Appellant the following damages: (1) $190,523.00 for past economic damages; (2) $893,200.00 for future economic damages; and (3) $564,000.00 in non-economic damages.

Thereafter, the district court instructed the parties to submit post-verdict letter briefs regarding the motions made at trial and at the close of the evidence. In the letters, Appellees asked that the court grant judgment as a matter of law in their favor, or remit the past and future economic damages. After receipt of the letters, the

---

[3] The case was removed from North Dakota state court to the United States District Court for the District of North Dakota pursuant to 28 U.S.C. §§ 1332, 1441.

[4] See N.D. Cent. Code §§ 32-03.2-01, 32-03.2-02 (1987).

[5] The district court assumed that CSS constituted the "other" because of the company's inadequate training of its lineman employees.

court issued an order reducing the award as set forth in Table I, and entered judgment accordingly.  Taylor then filed this appeal seeking to reinstate the jury verdict.

Table I[6]

|  | | District | |
|  | Jury Award | Court Award | Difference |
| --- | --- | --- | --- |
| **Past Economic Damages** | $190,523.00 | $30,523.56 | $159,899.44 |
| **Future economic Damages** | $893,200.00 | $27,440.00 | $865,760.00 |
| **Non-economic Damages** | $564,000.00 | $564,000.00 | 0 |

## II. DISCUSSION

Appellant argues that the applicable standard of review in this case is one of rigorous review.  He bases his discussion of the standard of review, however, on the erroneous assumption that the trial court granted judgment as a matter of law.  Contrary to Appellant's view, the procedural history indicates that the district court employed the mechanism of remittitur to reduce the amount of the jury award, and did not grant judgment as a matter of law.  The district court did not hold that, as a matter of law, there was no evidence to support an award of past and future economic damages.  Rather, the court found that the evidence supported an award of economic damages for medical expenses, and remitted the jury's awards for past and future economic damages from $190,523.00 to $30,523.56 and  $893,000.00 to $27,440.00, respectively.

---

[6] Table I illustrates the amount of the jury award, the amount of the district court's award, and the difference between the two.

The fact that the district court reduced the damages via remittitur rather than by entering judgment as a matter of law is relevant because it impacts the governing law and standard of review. A decision to grant remittitur "is a procedural matter governed by federal, rather than state law." Parsons v. First Investors Corp., 122 F.3d 525, 528 (8th Cir. 1997) (internal citation omitted). The scope of review of a district court's damage award "is extremely narrow" and the district court's award may not be reversed "except for a manifest abuse of discretion." Peoples Bank and Trust Company of Mountain Home v. Glove Int'l Publishing, Inc., 978 F.2d 1065, 1070 (8th Cir. 1992). In determining whether the trial court abused its discretion in ordering a remittitur, we analyze "whether the remittitur was ordered for an amount less than the jury could reasonably find." Slatton v. Martin K. Eby Constr. Co., Inc., 506 F.2d 505, 508-09 (8th Cir. 1974) (internal citations omitted).

"A verdict is not excessive unless the result is monstrous or shocking." Thorne v. Welk Investment, Inc., 197 F.3d 1205, 1212 (8th Cir. 1999). "We are guided by the law of the forum state in weighing the excessiveness of a verdict." Globe Int'l Publishing, Inc., 978 F.2d at 1070. The definition of excessiveness stated in Thorne mirrors the North Dakota law on the issue, which holds that a verdict is excessive when "the amount is so unreasonable and extreme as to indicate passion or prejudice on the part of the jury; the award is so excessive as to be without support in the evidence; or the jury verdict is so excessive as to appear clearly arbitrary, unjust, or such as to shock the judicial conscience." Dahlen v. Landis, 314 N.W.3d 63, 67 (N.D. 1981) (internal citation omitted).

In its order remitting the damages, the district court ultimately concluded that, beyond some allowance for medical expenses, "the award for future economic damages is not supported by any evidence . . ." and "the evidence [is] insufficient to support any award for future loss of earnings or diminution of earning capacity." The district court stated that it was viewing the evidence in a light most favorable to

the verdict, a standard that is in accord with the general principle that "the matter of damages rests largely in the sound discretion of the jury." Stoner v. Nash Finch, Inc., 446 N.W.2d 747, 753 (N.D. 1989). However, the court made several findings of fact which deviated from this standard. Both Taylor and his mother provided testimony which contradicted the court's findings that: (1) Taylor "voluntarily" left CSS; (2) CSS would have arranged for airline travel for Taylor if he wished to remain employed with the company after its departure from North Dakota; and (3) Taylor was physically capable of performing all the duties required of his supervisor position at CSS. After a careful review of the record, viewing the evidence in a light most favorable to the jury's assessment of damages, we find that the jury's verdict was reasonable and was not excessive.

"Future damages must be proved with reasonable certainty; they cannot be awarded on the basis of speculative possibilities or conjecture." Olmstead v. Miller, 383 N.W. 2d 817, 822 (N.D. 1986). Although, ideally, Appellant would have introduced more evidence as to the exact occupational impediments caused by his injuries, he did not, as the court held and Appellees argue, fail to introduce sufficient evidence to support the jury's findings. The trial court and Appellees have emphasized the fact that Taylor "voluntarily" quit his employment with CSS, and therefore should not be entitled to economic damages based on diminished earning capacity. While Taylor did "voluntarily" leave his job in the sense that he was not terminated, he made that choice because he was compelled to do so by the circumstances. He testified that he had difficulty traveling. The court found that CSS would have provided airline travel for Taylor had he wished to remain employed with them, but Taylor testified that this was never communicated to him. Taylor further testified that he often has to lay down during the day because of the drowsiness caused by his medication and the pressure and pain caused from his injuries. This testimony was corroborated by Taylor's mother.

The court found that Taylor was physically capable of performing all of the duties required of the supervisor position. This finding fails to account for the fact that the supervisor position included a duty to travel. Although the inability to travel long distances is a different type of limitation than, for instance, the inability to climb poles, it is a limitation nonetheless, and one the jury rightfully considered.

Taylor's testimony was further supported by the nature of his injuries in and of themselves, which the district court acknowledged were "severe and permanent." Again, although more extensive expert testimony would have been ideal, from a layperson's perspective, it is reasonable to conclude that suffering multiple fractures of the pelvis and sacrum, a severe hip injury, damaged nerves, and dislocated discs, would result in chronic pain and the need to adjust one's occupational activities. Additionally, his bladder function was dramatically affected.

Taylor's ability to mitigate his damages by performing at least some work tasks was also considered by the jury, as evidenced by the fact that the award for future economic damages encompasses an amount of approximately $25,000.00 a year for his life expectancy,[7] rather than $75,000.00 a year, an amount that he could have been making had he been able to continue his work as a supervisor. While the annual rate is slightly higher for past economic damages, the jury likely considered Taylor's failed attempts to mitigate damages during the period between when he quit work and when he brought this action, and the amount granted for that period is not manifestly unreasonable.

---

[7] Appellant was forty-two years of age at the time of trial. According to the National Vital Statistics Reports, United States Life Tables, Taylor had a life expectancy of 39.2 years. The court took judicial notice of Taylor's life expectancy and instructed the jury accordingly.

The jury was within its purview when it credited Taylor's testimony and found that his ability to work was impeded, at least somewhat, by his injuries. When the jury hears conflicting testimony, it is for the jury to resolve such conflicts in the evidence. Thorne, 197 F.3d at 1210-11. Only if damages are so excessive as to be without the support of the evidence should the court disturb a jury's verdict of damages. Nesseth v. Omlid, 574 N.W.2d 848, 852 (N.D. 1998). In analyzing whether a verdict is supported by the evidence, the trial court may not "substitute its judgment for that of the jurors. The determination of the amount of damages is peculiarly within the province of the jury. Such determination rests largely in its discretion." Dahlen, 314 N.W.3d at 67-68 (internal citation omitted). The verdict in this case was not unsupported by the evidence; rather, it was supported by evidence that, although challenged by Appellees, the jury accepted.

We conclude that the jury's verdict was not "monstrous or shocking" and that the amount of the remitted damages was for "an amount less than the jury could reasonably find." Accordingly, we hold that the district court erred in disturbing the jury's verdict.

## III. CONCLUSION

The district court's order to remit damages is reversed, and the court is directed to reinstate the jury's verdict.

_____